UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GENERAL SCIENTIFIC CORPORATION<br>d/b/a Surgitel,<br><br>       Plaintiff,<br><br>v.<br><br>ECLIPSE LOUPES AND PRODUCTS LLC<br><br>       Defendant. | Case No.: 19-cv-1666<br><br>Judge: Reiss<br><br>JURY TRIAL DEMANDED |

## MOTION AND INCORPORATED MEMORANDUM OF LAW
## FOR ENTRY OF FINAL JUDGMENT AND AWARD OF DAMAGES

Plaintiff General Scientific Corporation d/b/a SurgiTel ("Plaintiff" or "SurgiTel") submits this Motion and Memorandum of Law for entry of Final Judgment against Defendant Eclipse Loupes and Products LLC and for an award of damages and transfer of the infringing domain names.

On July 6, 2020, the Court, following the Clerk's Entry of Default, entered an Order and Default Judgment [D.E. 17], that among other things:

(1) Enjoined Defendant from further infringing Plaintiff's patent and trademark;

(2) Required Defendant to deliver to Plaintiff's counsel any remaining items that infringe Plaintiff's trademark;

(3) Enjoined Defendant's further use of the accused domain name, and within 15 days of receipt of the Order required Defendant to transfer the domain name to Plaintiff's control;

1

(4) Required Defendant within 15 days of receipt of the Order to disclose its supplier of the infringing goods; and

(5) Required Defendant, within 21 days of receipt of the Order, to respond to discovery requests that were directed to calculating damages.

Defendant is in violation of the Court's July 6, 2020 Order as it has not complied with the above identified requirements.  *See,* e.g., Ex. A, Declaration of Jeffrey A. Lindenbaum at ¶¶ 2-4. Plaintiff now moves for entry of Final Judgment and for entry of an award of damages in the amount of one hundred thousand dollars ($100,000), and for transfer of the infringing domain names.

### A. Damages Under the Lanham Act

Under the Lanham Act, trademark owners may elect to receive statutory damages, instead of actual damages, from infringers. *See* 15 U.S.C § 1117(c). The Lanham Act provides:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, or distribution of goods or services in the amount of — (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

In this case, the Court may award between $1,000 and $2,000,000 because "[t]rademark

infringement is deemed willful by virtue of a defendant's default." *Rovio Entm't v. Allstar Vending, Inc.,* 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (citing *Keystone Global LLC v. Auto Essentials, Inc.*, 2015 U.S. Dist. LEXIS 5612, 2015 WL 224359, at *6 (S.D.N.Y. 2015)).

Section 1117(c) was enacted to address the difficulty of calculating actual damages caused by counterfeiters. *See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* 2007 U.S. Dist. LEXIS 82201, 2007 WL 3287368, at *3 (S.D.N.Y. 2007); *Rodgers v. Anderson*, 2005 U.S. Dist. LEXIS 7054, 2005 WL 950021, at *2 (S.D.N.Y. 2005) ("The rationale for this section is the practical inability to determine profits or sales made by counterfeiters."); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible.'") (quoting S. Rep. No. 104-177, at 10 (1995)), *amended in part*, 328 F. Supp. 2d 439 (S.D.N.Y. 2004); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

To determine what is just, courts generally rely on the following seven factors: (1) expenses saved and profits reaped by the defendant; (2) revenues lost by the plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Off-White LLC v. Warm House Store*, 2019 U.S. Dist. LEXIS 12482, at *8 (S.D.N.Y. 2019).

**B. An Award of Damages in the Amount of $100,000 Under the Lanham Act is Just**

After refusing to participate in this action and defend its acts of willful infringement, the Defendant has now also willfully violated the Court's Order and has not provided any responses to the damages discovery that was mandated by the Order.  D.E. 17 at ¶ 9.  As a result, it is impossible to accurately calculate factors (1) and (2), namely the expenses saved and profits reaped by the Defendant or the revenues lost by the Plaintiff.  Under these circumstances, the courts have favored a meaningful award of damages, particularly when the lack of information comes at no fault of the Plaintiff.  *Id.* (awarding $100,000 per defendant in damages "because Plaintiff should not be deprived of its right to recover statutory damages simply because it is impossible to discern the expenses saved and profits reaped by the Defaulting Defendants").

The value of the trademark factor (no. 3) also supports Plaintiff's claim for damages.  Given that the goods in question are used almost exclusively for medical and surgical purposes the value of the trademark is extremely important as it allows Plaintiff to designate the source of its goods and distinguish them from other products in the marketplace, ensuring to the medical professionals that use such devices (and their patients) that they are receiving a product that meets certain quality standards.  Ensuring the quality of these products is important for the public's health and welfare.  *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 315 F. Supp. 45, 54 (S.D.N.Y. 1970)(*quoting, Morgenstern Chemical Co. v. G. D. Searle & Co.*, 253 F.2d 390, 393-94 (3d Cir. 1958)("In the field of medical products, it is particularly important that great care be taken to prevent any possibility of confusion in the use of trade-marks").

Factors (4), (5) and (7) support the requested award of damages because "by virtue of [its] default [defendant is] deemed to be [a] willful infringer" and courts in this Circuit routinely find the need to deter counterfeit activity.  *Golden Goose Deluxe Brand v. AAdct Official Store*,

2020 U.S. Dist. LEXIS 104091, at *8 (S.D.N.Y. 2020).  Moreover, when a party has defaulted, it supports a finding that "defendants' willful misconduct and failure to appear in this litigation merit a finding that a slight damage award is unlikely to deter them from continuing their illegal business." *Id.*  This point is evidenced in this case where the Defendant has again blatantly disregarded its obligations, this time violating the Court's July 6, 2020 Order [D.E. 17].

Finally, with regard to factor (6), defendant has failed to participate in this litigation, and thus has deprived Plaintiff of any records from which to assess the value of the infringing materials.  *Id.*  The Defendant has ignored its obligations to comply with the Court's Order directing Defendants to disclose information relevant to its sales and the amount of damages in this action.  Ex A at ¶ 2-4.  Under these circumstances, and particularly given Defendant's willful infringement and willful disregard of the Orders of this Court, Plaintiff's demand is just.  Certainly Defendant should not benefit from its own violation of the Court's Order and its willful actions to conceal the extent of its infringing sales.

### C. Damages Under the Patent Act

Upon finding for the claimant in a patent infringement action "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284; *Kaufman v. Microsoft Corp.*, 2020 U.S. Dist. LEXIS 6402, at *2 (S.D.N.Y. 2020).

In this case, because the Defendant defaulted and has violated the Court's Order by refusing to provide any discovery related to damages, it is impossible for Plaintiff to accurately calculate its patent damages or determine the amount that should be awarded as a reasonable

royalty payment.  Plaintiff does not know how many infringing items were sold and therefore cannot determine the reasonable royalty payment that would be applicable.

Notwithstanding, Plaintiff contends that the $100,000 it has sought under its Lanham Act claim also provides an adequate remedy and compensation for the losses it has suffered under its patent infringement claim, under these circumstances.

### D. Transfer of the Infringing Domain Name

Under the Court's July 6, 2020 Order ("Default Order"), Defendant was required to transfer the infringing domain name www.eclipseloupesandproducts.com ("First Domain") to Plaintiff's control within fifteen days of receipt of that Order.  As Defendant has not met this obligation, the domain name Registrar, GoDaddy.com, LLC, as directed under Paragraph 7 of the July 26, 2020 Order [D.E. 17], will be requested to transfer ownership of the First Domain to Plaintiff's control within thirty (30) days of receiving a copy of the Judgment.

Moreover, Defendant (and/or its officers or employees) is now using the First Domain to redirect consumers to a new domain name website at www.NewAgeImage.com ("Second Domain").  Defendant is using the Second Domain to continue selling the headlight product that infringes Plaintiff's patent, in violation of the injunction set forth in Paragraph 3 of the Court's Default Order.  D.E. 17 at ¶ 3; Ex. A, Declaration of J. Lindenbaum at ¶¶ 2 and 5.  Accordingly, to enforce compliance with the Default Order (at ¶ 3), Plaintiff also moves the Court to direct the Registrar, GoDaddy.com, LLC, to transfer ownership of the Second Domain to Plaintiff's control within thirty (30) days of receiving a copy of this Judgment.

**E. Conclusion**

Accordingly, for the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Order and Final Judgment, submitted concurrently herewith (Ex. B), which awards Plaintiff $100,000 in damages, directs transfer of the infringing domain names, and enters Final Judgment in favor of Plaintiff and against Defendant thereby concluding this matter.

                                              Respectfully submitted
                                              for Plaintiff,

By:    __s/ Jeffrey A. Lindenbaum_____
          Jeffrey A. Lindenbaum
          COLLEN *IP*
          The Holyoke-Manhattan Building
          80 South Highland Avenue
          Town of Ossining
          Westchester County, New York 10562
          (914) 941 5668 (telephone)
          (914) 941-6091 (facsimile)
          jlindenbaum@collenip.com

Dated: August 17, 2020

## CERTIFICATE OF FILING AND SERVICE

I Jeffrey A. Lindenbaum certify that on August 17, 2020 I electronically filed the foregoing Motion for Entry of Final Judgment and Award of Damages with the Court via ECF which will serve all counsel of record, and I delivered a copy via US Mail to the defaulting Defendant at:

ECLIPSE LOUPES AND PRODUCTS LLC
550 CENTER ROAD
WEST SENECA, NEW YORK, 14224


   s/ Jeffrey A. Lindenbaum_____
Jeffrey A. Lindenbaum

Dated: August 17, 2020